## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| COREY BURNS,<br>individually and on<br>behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLEET TECH INC.,<br>CLOVER EXPRESS INC.,<br>ADAM ANDERSON, and<br>SARUNAS DOBILAS,<br><br>Defendants. | Case No. <u>1:23-cv-16835</u> |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### I.      INTRODUCTION

1.      This is an action brought on behalf of current and former delivery drivers challenging Defendant Fleet Tech Inc.'s ("Fleet Tech") and Defendant Clover Express Inc.'s ("Clover Express") unlawful practices. Plaintiff challenges Fleet Tech's and Clover Express's unlawful practice of making deductions from delivery drivers' wages and requiring them to bear expenses which should have been properly borne by Fleet Tech and Clover Express. Plaintiff contends that, although he and other delivery drivers were classified by Fleet Tech and Clover Express as independent contractors, they were, in fact, employees of Fleet Tech and Clover Express. Plaintiff also contends that Defendants Adam Anderson and Sarunas Dobilas are individually liable by virtue of their roles within Fleet Tech and Clover Express, respectively permitting Fleet Tech and Clover Express's unlawful classification and compensation practices.

2.      Plaintiff Corey Burns ("Burns") brings this case as a class action under Fed. R. Civ. P. 23 on behalf of all current and former delivery drivers who have provided delivery services for Fleet Tech between December, 15, 2013 and the present. Plaintiff alleges that, as a result of Defendants' policies, illegal deductions were made from his and other delivery drivers' wages in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/9. Plaintiff also contends that Defendants unlawfully required him and others similarly situated to incur expenses that should have properly been borne by Defendants in violation of 820 Ill. Comp. Stat. 115/9.5

3.      Plaintiff also brings this case as a collective action under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of all current and former delivery drivers who have provided delivery services for Fleet Tech between November 2020 and the present. Plaintiff alleges that, as a result of Defendants' policies, and the deductions made from his and other delivery drivers' pay, Plaintiff and other delivery drivers received less than the minimum wage, in violation of the Fair Labor Standards Act, 29 U.S.C. § 206.

4.      Plaintiff also alleges that, as a result of their unlawful wage practices, Defendants were unjustly enriched.

## II.     THE PARTIES

4.      Plaintiff Corey Burns is an adult resident of Oswego, Illinois.  Burns provided trucking services for Fleet Tech and Clover Express in the State of Illinois as a truck driver from approximately August 2022 until November 2022.  During this time, Burns was classified as an independent contractor.

5.      Defendant Fleet Tech is an Illinois corporation headquartered in Chicago Heights, Illinois.  It does business in Illinois, operates multiple facilities in Illinois, and is registered with the Illinois Secretary of State.

2

6.      According to Defendant Fleet Tech's website, Fleet Tech has "a team of experienced drivers who are familiar with the job site requirements and regulations, ensuring that [their] client's needs are met with utmost professionalism and efficiency."[1]

7.      Defendant Clover Express is an Illinois corporation registered to an address in Lisle, Illinois with a business address in Lansing, Illinois. It does business in Illinois and is registered with the Illinois Secretary of State.

8.      Defendant Adam Anderson ("Anderson") is an Illinois resident and is the President and Secretary of Fleet Tech. In this capacity, Anderson possesses and exercises the authority to make or participate in decisions concerning drivers' compensation; implement and enforce rules affecting the material terms of drivers' work, employment, and compensation; hire drivers, supervise their work, and impose discipline on them.

9.      Defendant Sarunas Dobilas ("Dobilas") is an Illinois resident and is the President of Clover Express. In his role as President, Dobilas possesses and exercises the authority to make or participate in decisions concerning drivers' compensation; implement and enforce rules affecting the material terms of drivers' work, employment, and compensation; hire drivers, supervise their work, and impose discipline on them.

## III.    JURISDICTION AND VENUE

10.     The Court has personal jurisdiction over Plaintiff and the class he seeks to represent because they are citizens of the state of Illinois and/or worked in the State of Illinois for Illinois employers.

11.     The Court has personal jurisdiction over Defendants because Defendants reside in Illinois, do business in the State of Illinois, and their conduct in the State of Illinois underlies all claims in this suit.

---

[1] https://fleettechincorporated.com (last visited Nov. 9, 2023).

12.     The Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §216(b).

13.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant 28 U.S.C. § 1367(a), because these claims are so related to the federal claims that they form part of the same case and controversy.

14.     Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b), as the events giving rise to this lawsuit occurred in this District.

## IV.     STATEMENT OF FACTS

15.     Plaintiff was hired by Clover Express and Fleet Tech to perform deliveries in Illinois and across the United States.

16.     Plaintiff was required to sign an independent contractor agreement with Clover Express.

17.     Plaintiff leased a truck and trailer from Fleet Tech. The truck and trailer had markings on them displaying the Clover Express insignia.

18.     Plaintiff worked for Clover Express and Fleet Tech Full time, up to 14 hours a day, 7 days a week. He did not work anywhere else while working for Clover Express and Fleet Tech.

19.     Plaintiff and other delivery drivers were required to regularly check in with Clover Express dispatchers to take their instructions as to which loads to haul, where and when to pick up these loads.

20.     Plaintiff and other delivery drivers were also required to comply with Clover Express's strict time constraints for deliveries and other instructions and were required to regularly report to Clover Express staff and office in Illinois.

21.     Plaintiff was paid on a percentage-of-the-load basis for the deliveries he made.

22.     Throughout the course of Plaintiff's employment, Defendants made deductions from his pay for items including truck and trailer rentals, truck mileage, straps, IPASS, tablet, fees, tolls and fuel, which often came to thousands of dollars per week. Plaintiff did not authorize these deductions.

23.     In addition to the amounts that were unlawfully deducted from Plaintiff's pay, Defendants failed to reimburse Plaintiff's out-of-pocket expenses he incurred in order to perform his duties, including gas, insurance, cell phone payments, scales, and various maintenance items. Plaintiff's out-of-pocket expenses amounted to hundreds of dollars per month.

24.     Finally, Plaintiff's take-home pay was significantly below minimum wage for the duration of the Plaintiff's employment. Deductions and out-of-pocket expenses which Plaintiff was forced to incur directly contributed to bring his pay below minimum wage.

25.     For example, during the Plaintiff's first pay period, from August 21, 2022, through August 27, 2022, Plaintiff was not paid any compensation, and his pay statement indicated that he owed $14.97 to Defendants, even though he drove roughly 1108 miles and worked approximately 17 hours during that week.

26.     Likewise, during the period of September 18, 2022, through September 24, 2022, plaintiff did not receive any compensation. Plaintiff's net earnings were -$1441.65 after driving 757 miles from San Diego, CA to Aztec, NM. This deficit was subtracted from Plaintiff's subsequent paychecks.

27.     There is not a single pay period during the roughly three-month period of Plaintiff's employment in which Plaintiff received minimum wage as required by the FLSA. Instead, his pay statements show that he was routinely either paid nothing or allegedly owed Defendants money for the work he performed.

28.     Although Clover Express and Fleet Tech classified Plaintiff and other delivery

drivers as independent contractors, the behavior and financial control manifested over the drivers by Clover Express and Fleet Tech demonstrates that they were employees of Clover Express and Fleet Tech.

29.     Plaintiff and other class members were required to pick up trucks and trailers from Fleet Tech's Yard in Illinois. Additionally, all repairs of equipment provided by Fleet Tech had to be conducted at Fleet Tech's yard in Illinois.

30.     Plaintiff and other class members were hired by Clover Express and Fleet Tech in Illinois at Fleet Tech's office, were required to pick up and deliver freight for Clover Express and Fleet Tech in Illinois, and received directions regarding their deliveries from Clover Express dispatchers and management team in Illinois.

31.     Defendants controlled every aspect of their drivers', including Plaintiff's, work. Such control included, but was not limited to the following:

      A.  Defendants required Plaintiff and other similarly situated drivers to comply with instructions dictated by written and unwritten policies, procedures, and directives regarding Plaintiff's and other similarly situated drivers' duties.

      B.  Plaintiff and other delivery drivers were required to report to Fleet Tech's facilities regularly. For example, Plaintiff and other drivers were regularly required to come to the Illinois Fleet Tech office and yard to have their equipment serviced.

      C.  The trucks and trailers Plaintiff and class members drove bore Clover Express insignia and markings.

      D.  Plaintiff, as well as other similarly situated drivers, were required to report to or contact dispatchers employed by Clover Express and/or Fleet Tech each day, at which time the Plaintiff and other similarly situated drivers

6

were provided with delivery assignments.

E.  Clover Express instructed Plaintiff and other similarly situated drivers which loads to pick up, the location of the loads/goods to be delivered, as well as the time frames for loading onto the equipment. Additionally, Clover Express dictated the time by which each delivery must be made. Clover Express's dispatchers and supervisors also communicated with Plaintiff and similarly situated drivers while they were driving via telephone in order to convey instructions and otherwise oversee the drivers.

F.  Plaintiff and other similarly situated drivers had GPS devices on their vehicles, which allowed Defendants to track the drivers throughout the day.

G.  Clover Express and Fleet Tech subjected drivers, including Plaintiff, to a variety of deductions, including, but not limited to, deductions for gas, truck and trailer payments, and truck milage.

H.  If Plaintiff or other similarly situated drivers wished to take time off, they were required to give timely advance notice to Defendants, with the Plaintiff and other similarly situated drivers disciplined or terminated for failure to provide such notice.

32.  Plaintiffs performed work which is in the usual course of business of Clover Express and Fleet Tech — *i.e.* they were truck drivers who performed delivery services and Clover Express and Fleet Tech are engaged in business of providing trucking delivery services to their customers.

33.  Plaintiffs drove trucks which were under Clover Express DOT Number.

34.  Clover Express and Fleet Tech required Plaintiff and putative class members to submit all bills of lading, logbooks, and other required paperwork to Fleet Tech's office in

Illinois.

35. At no time during their employment were Plaintiff and other similarly situated drivers allowed to have their own customers nor did they ever have their own customers. Further, they could not choose and did not choose their own routes for delivery of cargo, could not and did not receive compensation or otherwise exchanged payment for their delivery other than being compensated by Clover Express and Fleet Tech and could not and did not negotiate any matters or bargains with any customers or brokers.

36. Plaintiff and other similarly situated truck drivers shared similar job titles, followed the same policies and practices, performed similar duties, and as a result of Defendants' common scheme of misclassification and applications of unlawful deductions, were similarly denied compensation in violation of the IWPCA.

## V.  CLASS ALLEGATIONS

37. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3) for the following IWCPA Class:

> all other persons who contracted to provide trucking delivery services for Defendants as delivery drivers in Illinois, and who personally provided trucking delivery services to Defendants, who have either been classified as independent contractors or have not been paid or treated as employees during the relevant statutory period.

38. The members of the class are so numerous that joinder of all members is impracticable. Plaintiffs believe that the Class numbers exceed forty (40) members.

39. Common issues of law and fact predominate the claims of the class. Specifically, all claims are predicated on a finding that Clover Express and Fleet Tech misclassified their drivers as independent contractors when they were in fact employees. In short, the claims of the named Plaintiff are identical to the claims of the class members.

8

40.     The named Plaintiff is an adequate representative of the class because all class members were subject to Fleet Tech's uniform practices and policies. Further, Plaintiff and the potential class plaintiffs have suffered the same type of economic damages as a result of Fleet Tech and Clover Express's practices and policies.

41.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff's counsel is competent and experienced in litigating large wage and hour class and collective actions.

42.     Finally, a class action is the only realistic method available for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation makes it impractical for members of the class to seek redress individually for the wrongful conduct alleged herein. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court and create the risk of inconsistent rulings which would be contrary to the interest of justice and equity.

## VI.     COLLECTIVE ALLEGATIONS

43.     Plaintiff's FLSA claims should proceed as a collective action on behalf of all similarly situated individuals who worked as trucking delivery drivers for Defendants during the past three years who may choose to opt-in to this case.

44.     All potential opt-in Plaintiffs worked pursuant to the common misclassification scheme described above under which Defendants did not pay drivers at least the minimum wage for all hours worked, and therefore they are "similarly situated" as that term is defined in 29 U.S.C. § 216(b).

**Count I**
**Illinois Wage Payment and Collection Act**
**(Unlawful Deductions)**

45.     Plaintiff re-alleges and incorporates by reference all paragraphs 1-44 of this Complaint as if fully rewritten herein.

46.     At all relevant times, Plaintiff and members of the proposed class were "employees" of Defendants as defined by the IWPCA.

47.     At all relevant times, Defendants were employers of Plaintiff and proposed class members as defined by the IWPCA.

48.     The IWPCA, 820 Ill. Comp. Stat. 115/9, prohibits employers from making unauthorized deductions from employees' wages.

49.     Clover Express and Fleet Tech violated the IWPCA, 820 Ill. Comp. Stat. 115/9, by making unlawful deductions from Plaintiff's and class members' wages.

50.     Adam Anderson and Sarunas Dobilas violated the IWPCA, 820 Ill. Comp. Stat. 115/9, by permitting and directing Clover Express and Fleet Tech to make unlawful deductions from Plaintiff's and the proposed class members' wages.

51.     Plaintiff seeks reimbursement for all unlawful deductions taken by Pigeon Freight from his and class members' pay.

**Count II**
**Illinois Wage Payment and Collection Act**
**(Expenses)**

52.     Plaintiff re-alleges and incorporates by reference all paragraphs 1-44 of this Complaint as if fully rewritten herein.

53.     At all relevant times, Plaintiff and the proposed class members were "employees" of Defendants as defined by the IWPCA.

54.     At all relevant times, Defendants were employers of Plaintiff and the proposed class as defined by the IWPCA.

55.     Fleet Tech and Clover Express violated Section 115/9.5 of the IWPCA by failing to reimburse Plaintiff and other class members who worked for them since January 1, 2019 for expenditures they incurred related to services performed for the Defendants from January 1, 2019 to the present.

56.     Adam Anderson and Sarunas Dobilas violated the IWPCA, 820 Ill. Comp. Stat. 115/9.5, by permitting drivers to incur expenses related to their work for Fleet Tech and Clover Express that should have been borne by Defendants.

57.     Plaintiff seeks reimbursement for all unlawful expenses he and the proposed class members were forced to incur as part of their work for Defendants.

**Count III**
**Fair Labor Standards Act**
**(Minimum Wage)**

58.     Plaintiff re-alleges and incorporate by reference all paragraphs 1-44 of this Complaint as if fully rewritten herein.

59.     Fleet Tech and Clover Express regularly failed to pay Plaintiff and the members of the putative FLSA collective the statutory minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

60.     Under the FLSA, 29 U.S.C. § 206, Defendants were required to pay Plaintiff and the members of the putative collective minimum wage for all hours worked.

61.     However, due to the improper deductions Defendants made from Plaintiff's and FLSA collective members' pay, as well as the out of pocket expenses they were forced to pay directly, the wages of Plaintiff and the members of the FLSA Collective regularly fell below the minimum wage.

62.     Defendants' conduct was willful and intentional, in that Defendants knew, required, approved and/or suffered or permitted Plaintiff and members of the FLSA collective to work hours for which they were not paid at the federal minimum wage.

63.     This claim is brought on behalf of a group of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. §216(b).

**Count IV**
**Unjust Enrichment**
**(In the alternative to Counts I and II)**

64.     Plaintiff re-allege and incorporates by reference all paragraphs 1-44 of this Complaint as if fully rewritten herein.

65.     As a result of Fleet Tech and Clover Express's mischaracterizing of Plaintiff and the proposed class as "independent contractors," Plaintiff and members of the proposed class were forced to pay substantial sums of money for work-related expenses, including but not limited to costs associated with operating and maintaining the trucks they drove.

66.     Further, by mischaracterizing Plaintiff and the proposed class as "independent contractors" Fleet Tech and Clover Express evade employment-related obligations, specifically workers' compensation coverage.  Fleet Tech and Clover Express illegally shift these costs to Plaintiff and class members.

67.     By wrongly characterizing Plaintiff and class members as "independent contractors," Fleet Tech and Clover Express are able to save significant sums of money that they otherwise would be forced to expend on workers' compensation insurance.

68.     By misclassifying its employees as "independent contractors," and by requiring those employees to pay their expenses, Clover Express and Fleet Tech have been unjustly enriched.

## Prayer for Relief

WHEREFORE, Plaintiff requests that the Court enter the following relief:

1. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3);

2. Appointing Plaintiff Corey Burns as class representative and his counsel as class counsel;

3. An order enjoining Defendants from violating the IWPCA and FLSA;

4. All unpaid wages;

5. Restitution for all deductions taken from Plaintiff's and class members' wages;

6. Restitution for all Defendants' operating expenses that Plaintiff and class members were forced to bear

7. Prejudgment interest on the unpaid wages in accordance with 815 Ill. Comp. Stat. 205/2;

8. Statutory damages pursuant to the formula set forth in 820 Ill. Comp. Stat. 115/14(a);

9. Certification of this case as a collective action pursuant to 29 U.S.C. § 216(b);

10. Payment of all wages due to Plaintiffs and members of the collective action;

11. Liquidated damages under the FLSA;

12. Attorney's fees and costs;

13. Any other relief to which Plaintiffs and the Class/Collective members may be entitled.

DATED: December 15, 2023

Respectfully Submitted,

COREY BURNS, individually and on behalf of all others similarly situated,

By his attorneys,

/s/ Bradley Manewith

Bradley Manewith, IARDC # 6280535
Lichten & Liss-Riordan, P.C.

13

5 Revere Drive, Suite 200
Northbrook, IL 60062
Tel. (617) 994-5800
Fax (617) 994-5801
bmanewith@llrlaw.com


Harold Lichten (*pro hac vice anticipated*)
Olena Savytska (*pro hac vice anticipated*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800
Fax (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com

Karen J. Doran
Karen J. Doran, Attorney at Law
130 W. Liberty Drive, Suite 200
Wheaton, IL 60187
Tel. (630) 384-9367
karen@karendoranlaw.com