**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COREY BURNS, individually and on behalf of all others similarly situated, <br><br>Plaintiff, <br><br>v. <br><br>FLEETECH, INC., CLOVER EXPRESS INC., MINDAUGAS MICKEVICIUS, and SARUNAS DOBILAS, <br><br>Defendants. | Case No. 1:23-cv-16835 |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

Pursuant to this Court's order of January 30, 2025 (Dkt. 58), Plaintiff Corey Burns ("Plaintiff"), and Defendants Fleetech, Inc., Clover Express, Inc., Mindaugas Mickevicius, and Sarunas Dobilas (collectively "Defendants") respectfully submit the following Joint Motion for Approval of Settlement Agreement. In support thereof, the Parties state as follows:

**Introduction**

1. The Parties respectfully move this Court to approve the proposed settlement reached by the Parties and memorialized in their Settlement Agreement and Mutual General Release (the "Settlement Agreement" or "Settlement").

2. The Parties submit that the proposed Settlement is fair and reasonable. The Settlement was achieved during arms-length negotiations between the Parties, conducted by experienced counsel, after contested litigation.

3. The Settlement achieves both sides' primary objectives. For Plaintiff, the Settlement ensures Plaintiff will be paid promptly, and in full, for wages he alleges are due to him under the Illinois Wage Payment and Collection Act ("IWPCA") and the federal Fair Labor Standards Act ("FLSA"). For Defendants, the Settlement ensures finality and offers Defendants the ability to resolve these claims without the burden and expense of litigation, and without an admission of liability or wrongdoing.

4. Though Plaintiff filed this lawsuit as a putative class and collective action, Plaintiff's Renewed Motion for Conditional Certification was denied by this Court (Dkt. 53), and Plaintiff has not moved for Rule 23 class certification. As such, the Settlement does not affect any claim of any other person other than the Plaintiff.

## THE LAWSUIT

5. On December 15, 2023, Plaintiff commenced the above-captioned action ("Lawsuit") alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* (the "IWCPA"), and that Defendants were unjustly enriched relative to their alleged employment relationship with Plaintiff. Plaintiff claimed to have been employed as an interstate truck driver by Defendants and sought to represent himself and all other drivers that were allegedly improperly classified by Defendants as independent contractors in a class action under 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure 23.

6. On March 7, 2024 and November 15, 2024, the Clover Defendants and the Fleetech Defendants filed their respective Answers and Affirmative Defenses to the Lawsuit, denying all liability and asserting a variety of defenses. (Dkt. 17, 48). More specifically, the Fleetech Defendants alleged, *inter alia*, that they cannot be held liable for Plaintiff's claims because

2

Defendant Fleetech, Inc. is not and was never a federally authorized motor carrier, is not and has never been a participant in any part of the supply chain, has not, and has never had, any broker or shipper customers, had no employment or independent contractor relationship with Plaintiff, and the only legal relationship between Defendant Fleetech, Inc. and Plaintiff was with Plaintiff's non-party business and that such relationship was limited to Defendant Fleetech, Inc. leasing commercial motor vehicles to Plaintiff's non-party business. The Fleetech Defendants further alleged, *inter alia*, that they could not be held liable for any FLSA, IWPCA, or any common law violations alleged to have been committed by the Clover Defendants as Defendant Fleetech, Inc. only processed payments to drivers operating under Defendant Clover Express, Inc.'s motor carrier operation authority under an arms-length negotiated contract between Defendant Fleetech, Inc. and Defendant Clover Express, Inc. and with information provided, *inter alia*, by Defendant Clover Express, Inc.

7. Plaintiff filed a renewed motion for conditional certification on October 16, 2024. [Dkt. 45]. On January 14, 2025, the renewed motion was denied by the Court, based upon arguments solely advanced by the Fleetech Defendants, without prejudice. [Dkt. 49, 53]. Plaintiff has not filed a motion for class certification under Rule 23.

8. During the period between January 17, 2025 and January 30, 2025, the Parties' respective counsel engaged in settlement negotiations, culminating in their reaching an agreement in principle to compromise and settle all claims that were or could have been asserted by Plaintiff against Defendants, including but not limited to, the allegations in the Lawsuit, and as set forth herein.

9. Soon thereafter, the Parties began discussing the possibility of settlement. On January 30, 2025, the Parties advised the Court that they had reached a settlement in principle. Dkt. 57.

10. The Parties acknowledge that should this case proceed, many *bona fide* disputes over legal and factual issues will have to be litigated, the ultimate resolution of which will substantially impact the outcome of these matters.

## THE SETTLEMENT

11. The proposed Settlement eliminates the time, cost, and uncertainty that would be occasioned by further litigation of the issues.

12. If approved by the Court, the Gross Settlement Amount of $40,000.00 will compensate Plaintiff for all of his allegedly withheld (though disputed) wages, and all other claims for damages, attorneys' fees, statutory penalties, and other relief.

## THE PROPRIETY OF APPROVAL

13. It is customary in the Seventh Circuit for parties to request court approval of settlements to ensure a valid and enforceable release of an FLSA claim. *See*, *e.g., Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. Dep't of Labor,* 679 F.2d 1350, 1352–53 (11th Cir. 1982)); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 7, 2001). However, it is less clear under Illinois law whether releases under the Wage Act also require court approval. *See id.* at 6–7; *Lewis v. Giordano's Enterprises, Inc.*, 397 Ill. App. 3d 581, 593 (1st Dist. 2009); *see also* Wage Act, § 9 ("The acceptance by an employee of a disputed paycheck shall not constitute a release as to the balance of his claim and any release or restrictive endorsement required by an employer as a condition to payment shall be a violation of this Act and shall be void."). However, courts review

4

the reasonableness of settlements under both the FLSA and the Wage Act using a similar analysis. *See Lewis*, 397 Ill.App.3d. at 593.

14. When reviewing a proposed settlement releasing claims of unpaid wages, the district court should review the settlement and decide whether it is a "fair and reasonable resolution of a *bona fide* dispute." *Lynn's Food Stores, Inc.,* 679 F.2d at 1353, 1355. If a settlement reflects a reasonable compromise over issues, such as statutory coverage or computation of wages that are actually in dispute, the court should approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354.

15. This litigation involves a series of hotly disputed factual and legal issues, which would result in lengthy and complex litigation absent the Settlement. Among other issues, the parties disagree whether Plaintiff was properly classified as an independent contractor; whether Fleetech and Mickevicius are liable as Plaintiff's joint employers; whether and to what extent Defendants made improper deductions from Plaintiff's pay and/or improperly failed to reimburse him for business expenses.

16. The resolution of any one of these issues could affect Plaintiff's potential recovery dramatically, and he may not recover at all. However, resolving these factual and legal issues could only be accomplished after costly and burdensome discovery and litigation. And, at the end of the day, both sides would face a greater degree of risk than they are currently willing to accept.

17. In light of these realities, the Parties believe that the Settlement is the best way to resolve the disputes between them, and, given the contested nature of the underlying litigation, the Court should likewise conclude that the Settlement is fair. *See Lynn's Food Stores, Inc*., 679 F.2d at 1354 (recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting

in settlement as indicia of fairness); *Roberts v. Apple Sauce, Inc.*, No. 12-cv-830, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014) ("The reviewing Court normally approves a settlement where it is based on 'contentious arm's-length negotiations, which were undertaken in good faith by counsel' and where 'serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.'") (internal citations omitted).

18. Furthermore, in reviewing the record and evaluating the strength of the case to determine whether a proposed settlement is "a fair and reasonable resolution of a *bona fide* dispute," *Lynn's Food Stores, Inc.*, 679 F.3 d at 1355, courts consider the following non-exclusive factors: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Plaintiff[s] to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation." *Butler v. American Cable & Telephone, LLC*, No. 09 CV 5336, 2011 WL 4729789, at *9, n.9 (N.D. Ill. Oct. 6, 2011). In this instance, the Settlement meets all applicable factors considered by courts, rendering it fair and reasonable.

19. As an initial matter, the Settlement appropriately factors in the complexity, risk, expense, likely duration of the litigation, and the range of reasonableness of the settlement in light of the best possible recovery. Moreover, the Settlement is not the product of fraud or collusion. Instead, the Settlement was reached in an adversarial proceeding through arm's length negotiations between capable attorneys who have extensive experience litigating employment law claims. More

specifically, the Parties engaged in negotiations for nearly two weeks before reaching a settlement in principle, including discussion of the computation of alleged unpaid wages. Written discovery had been exchanged in this case, and counsel for the Parties were familiar with the facts and legal issues when settlement was reached. In the end, experienced counsel on both sides of the matter deemed the settlement fair and reasonable.

20. The Settlement guarantees Plaintiff will receive a monetary settlement nearly immediately, instead of hoping for a possible judgment at an unknown future date after the Parties engage in discovery, briefing on motions for summary judgment, and a trial. Furthermore, the Parties recognize that the issues in this case lend themselves to grounds for appeal of any final decision, regardless of the prevailing party, and have taken the likelihood of an appeal into account in considering the merits of the potential Settlement. The Settlement Agreement thus allows the Parties to put this case behind them so that they can eliminate the distractions of litigation and focus on other matters.

21. In sum, the Parties are satisfied and jointly represent to the Court that the Settlement Agreement fairly resolves the dispute between them in the instant action. The Parties stipulate to the dismissal with prejudice of the instant action upon Court approval. Accordingly, the Parties request that the Court approve the Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Wage Act.

## **CONCLUSION**

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement as fair and reasonable, and dismiss the matter with prejudice.

DATED: February 24, 2025	Respectfully Submitted,

          */s/ Olena Savytska*
Harold Lichten (*pro hac vice*)
Olena Savytska (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800
Fax (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com

Bradley Manewith, IARDC # 6280535
Lichten & Liss-Riordan, P.C.
5 Revere Drive, Suite 200
Northbrook, IL 60062
Tel. (617) 994-5800
Fax (617) 994-5801
bmanewith@llrlaw.com

Karen J. Doran
Karen J. Doran, Attorney at Law
130 W. Liberty Drive, Suite 200
Wheaton, IL 60187
Tel. (630) 384-9367
karen@karendoranlaw.com

*Attorneys for Plaintiff*


   */s/Joseph Blitch*
Joseph Blitch
Matthew P. Barrette
BLITCH WESTLEY BARRETTE, S.C.
1550 Spring Road, Suite 120
Oak Brook, Illinois 60523
TEL: (312) 283-4220
JBlitch@bwesq.com
MBarrette@bwesq.com

*Attorney for Defendants Fleetech, Inc. and Mindaugas Mickevicius*

8

      /s/Saulius Modestas
Saulius Modestas
Modestas Law Offices, P.C.
401 S. Frontage Road, Ste. C
Burr Ridge, IL 60527
(312) 251-4460
smodestas@modestaslaw.com

*Attorney for Defendants Clover Express, Inc. and Sarunas Dobilas*

**Certificate of Service**

I hereby certify that on February 24, 2025, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Olena Savytska*
Olena Savytska
